UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

PACIFIC STEEL GROUP,

Plaintiff,

v.

COMMERCIAL METALS COMPANY; CMC
STEEL FABRICATORS, INC. d/b/a CMC
REBAR; CMC STEEL US, LLC,

Defendants.

Case No. 4:20-cv-07683-HSG

**JOINT STIPULATION AND
ORDER REGARDING
PRODUCTION OF
ELECTRONICALLY STORED
INFORMATION AND PAPER
DOCUMENTS**

**STIPULATION AND ORDER**

Pursuant to Civil Local 7-12, Plaintiff and Defendants (the "Parties"), by and through their

undersigned counsel, hereby respectfully request that the Court enter the Parties' stipulation to the

ESI protocol set forth below to govern document production in the above-captioned case.  IT IS

HEREBY AGREED AND STIPULATED, that the Parties agree to the ESI protocol set forth

below.

I.    **GENERAL PROVISIONS**

    A.    **Applicability:** This Order Regarding Production of Electronically Stored

        Information and Paper Documents ESI Protocol ("ESI Protocol") will govern the

        production of ESI and paper documents in the above-captioned case whether they

        currently are involved or become so in the future, including any related actions

        that may later be consolidated with this case (collectively, the "Litigation").

    B.    **Limitations & Non-Waiver:** Nothing in this ESI Protocol shall be construed to

        affect the admissibility of discoverable information. All objections to the

admissibility of any documents are preserved and may be asserted at any time. Pursuant to the terms of this ESI Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure, including foreign data protection laws. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

C.  **Deadlines:** References to schedules and deadlines in this ESI Protocol shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

D.  **Definitions:**

1.  Plaintiff and Defendants, as well as their officers, and employees, are referred to as the "Parties" solely for the purposes of this ESI Protocol. Plaintiff or a single Defendant, as well as, where applicable, its respective officers, and employees, may also be referred to as a "Party" solely for the purposes of this ESI Protocol.

2.  To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

E.  **Authenticity and Admissibility:** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

**F.**   **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Protected Material under any Protective Order entered in this matter.

**G.**   **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI that may exist for a document or ESI, in accordance with their obligations under applicable law. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## II.   GENERAL PRODUCTION FORMAT PROTOCOLS

**A.**   **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique "Bates" or document control number of that image, pursuant to ¶ II(F) (e.g., BATES0000000001.TIF). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format shall also be imaged so that such content is viewable on the image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format (e.g., items identified in II(C) below), may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats if so agreed

by the requesting Party, which may include native format, or a combination of native and TIFF formats.

**B.**   **Text Files:** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item (e.g., BATES0000000001.TXT).

1.   **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals or the existence of handwriting on a document, not all documents lend themselves to the generation of accurate OCR. If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format.

2.   **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in **Section II.B(1).**

**C.**   **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in section II(A) with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix A hereto. The exception to this rule shall be the following:

1.   Presentation files (e.g., MS PowerPoint) shall also be produced both with TIFFs and its associated native file; and

2.  Spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in only in native format. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced bearing that item's Bates number and confidentiality designation. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data.

D.  **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix A.

**E.** **Native Integrity and Confidentiality:** Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. The requesting Party shall also ensure that the confidentiality assigned to the document follows the native pursuant to Section II.K.

**F.** **Bates or Document Control Numbering:**

    1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, or embedded spaces, except for hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

    2.    If a Bates number or set of Bates numbers is intentionally skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

    3.    The producing Party will take reasonable efforts to stamp all TIFF images at a location that does not obliterate or obscure any part of the underlying images, with reasonable efforts to place the stamp on the face of the image in the lower right-hand corner.

**G.** **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

**H.** **Entire Document Families:** Subject to Paragraphs II(L)(1) and II(L)(2) below, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, except the following:

1. junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the Parties);

2. documents that are withheld on the basis of privilege and in compliance with the Parties' stipulation or the Court's order on or local rules concerning such assertions of privilege; and

3. upon stipulated agreement by the requesting Party or further Order of the Court, attachments to emails that are (a) non-responsive, (b) contain highly confidential material; and (c) do not impede the understanding of the remaining responsive documents in the email family. Such non-responsive attachments shall be produced as a slip sheet with a single Bates number and shall be stamped with "NR HC Attachment Withheld."

**I.** **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.DAT). The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.). There should be one row in the load file per TIFF image. Every image in the delivery volume should be contained in the image load file. The image key should be named the same as the Bates number of the page. Load files should not span across media (e.g., CDs, DVDs, Hard

Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered. The data load file (i.e., the .DAT file) should use standard Concordance delimiters: Comma - ¶ (ASCII 20); Quote - p (ASCII 254); and Newline - ® (ASCII174). The first record should contain the field names in the order of the data. All date fields should be produced in mm/dd/yyyy format. Use carriage-return line-feed to indicate the start of the next record. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT). The volume names should be consecutive to the extent possible (i.e., ABC001, ABC002, et. seq.). If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format. Load files should not be split across volumes regardless of delivery media.

**J.**    **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the producing Party.

**K.**    **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of any Protective Order entered by the Court in the Litigation, or a stipulation entered into by the Parties, the

designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images to the extent practicable. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol, any Protective Order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document or category of document) basis to address any potential over (or under) designation.

L.    **Redactions:**

1.    **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories: (a) the information relates to medical or health issues of an individual, (b) social security numbers, bank account information, or personal passcodes, or (c) the telephone numbers, email address, or home addresses of non-business related friends or family unless such redaction is reasonably likely to impede the requesting Party's ability to authenticate the identity of the sender or recipient of a relevant communication, or (d) is otherwise protected from disclosure by any applicable law, regulation, or rule after providing notice to the requesting Party of the grounds for applying such law, regulation, or rule and an opportunity to challenge the

grounds for any such application prior to production. Such redactions should be identified as "Redacted — PD" on the document.

2. **Privilege Redactions:** a producing Party may redact information protected by the attorney-client privilege, the work product doctrine, the common-interest doctrine, or any other applicable privilege, protection, or immunity recognized by U.S. law. Such redactions must be identified as "Redacted-Privileged" on the document.

M. **Production Media & Protocol:** A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC-compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP.  For productions under 10 GB, transmission via filesharing service or SFTP is required if practical.  The producing Party must encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

N. **Foreign Language Documents:** To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the producing Party shall produce all such documents or ESI in the original language(s), as well as any English translations of such documents or ESI and certifications of such translations that are readily available and stored by the party in the ordinary course (i.e., that were not created specifically by a Party for the Litigation).

III. **PAPER DOCUMENT PRODUCTION PROTOCOLS**

A. **Scanning:** A producing Party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents. Where OCR is used, the Parties agree that the following ¶¶ III(B)-(C) shall apply.

B. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c)

BegAttach, (d) EndAttach, (e) DocumentType, (f) Custodian, (g) TextPath, (h) Confidentiality, and (i) Redacted (Y/N) or otherwise indicating that a redaction is present. Additionally, all paper documents will be produced with a coding field named "Record Type" with "Paper" in it or something indicating that the document originated in paper form, and such indication shall be explained to the requesting Party.

C. **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

    1. **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. The Parties will make their best efforts to unitize documents correctly. However, non-responsive documents within a folder, clipped bundle, or binder need not be produced.

    2. **Identification:** Where a document, or a document group— such as folder, clipped bundle, or binder has—an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

## IV.   ESI METADATA FORMAT AND PROCESSING ISSUES

A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other

file types may be added to the list of excluded files if they clearly do not have user-created content.

**B.    Metadata Fields and Processing:**

1.    **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone, and the time zone (e.g., GMT) used shall be disclosed to the requesting Party

2.    **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.    Except as otherwise set forth in this ESI Protocol, ESI files shall be produced with at least each of the data fields set forth in Appendix A that can reasonably be extracted from a document.

4.    The Parties are not obligated to manually populate any of the fields in Appendix A if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) File Type, (f) Custodian/Source, (g) Hash Value, (h) File Name, (i) Subject, (j) From, (k) To, (l) CC, (m) BCC, (n) Sent Date, (o) Received Date, (p) Author, (q) Last Modified Date, (r) Created Date, (s) Folder Path, (t) Confidentiality, and (u) Redactions.

   a.    For the avoidance of doubt, **Appendix A** identifies the field names that must be included for hard copies, emails, and other ESI.

**C.    Redaction:**

1.    The Parties agree that generally, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ **II(C)** above. Any metadata fields reasonably

available and unnecessary to protect the privilege protected by the redaction shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

2.  Redactions will be indicated by clearly-bordered boxes containing a text describing the reason for the redaction (i.e., "Redacted – Privileged" or "Redacted – Work Product").

3.  If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in **¶ II(C)** above and native items are also withheld, to the extent reasonably practicable, each entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than appear as "##########."

4.  If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

**D.**     **Email Collection and Processing:**

    1.    **Email Domains:** Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources. To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this paragraph, and to meet and confer on the timing for such disclosures.

**E.**     **De-Duplication:** To the extent consistent with the below subparts, the producing Party need only produce a single copy of a particular electronic document.

    1.    **Vertical De-Duplication.** A producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in the BCC or other blind copy field, even if all remaining content in the email is identical.

    2.    **Horizontal De-Duplication.** A producing Party may de-duplicate ESI horizontally (globally) across the population of records, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all custodians who were in possession of a de-duplicated document must be identified in the AllCustodian field. To ensure accuracy, the AllCustodian fields must be

captured by an automated process and cannot be populated using a manual process. In the event of a rolling production of documents or ESI items, the producing Party shall provide an overlay load file with updated AllCustodian fields along with each production or as soon as practicable thereafter. The metadata overlay may contain a full refresh of data for the AllCustodian fields or be a supplement to the information previously provided for the fields. At the time of production, the producing Party shall identify the overlay as a full refresh overlay or a supplemental overlay.

3.      Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting Party and approved in writing before implementation.

4.      Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

**F.**     **Zero-byte Files:** The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

**G.**     **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a metadata field or the image should be branded with "auto" for the feature involved, to the extent practicable.

**H.**     **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**I.**     **Embedded Objects:** With the exception of embedded Microsoft Excel, Microsoft Word, Microsoft PowerPoint, or similar objects which are each to be extracted as standalone documents, the Parties agree that other embedded objects, including, but not limited to, logos, icons, emojis, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

**J.**     **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .RAR, and **.ZIP)** shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**K.**     **Password-Protected, Encrypted, or Proprietary Software Files:** With respect to any ESI item that is within the scope of review and either password-protected or encrypted, the producing Party will take reasonable steps to identify the password for the ESI item or unencrypt the ESI item so that it can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party. ESI that is reasonably likely to contain responsive, non-duplicative information and that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

**V.     PRODUCTION OF PRIVILEGE LOGS.**

1.     Except as provided below, for any Document redacted or withheld in its entirety, the producing Party shall produce privilege logs in MS Excel format or any other agreed-upon format that permits electronic sorting and searching.

2.     Exclusions from Logging Potentially Privileged Documents: The following categories of Documents need not be reflected in a producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree.

a.     Communications after October 30, 2020, exclusively between a producing Party and its corporate in-house and/or outside counsel regarding this litigation. For avoidance of doubt, communications regarding whether or how to enforce, limit, or waive the CMC-

1    Daneili Exclusivity Provision (*see* ECF No. 92) are <u>not</u>

2    communications "regarding this litigation."

3    b.    Any privileged materials or work product created by or specifically

4    at the direction of a producing Party's outside counsel, an agent of

5    outside counsel other than the producing Party, any non-testifying

6    consultants or experts in anticipation of or in connection with this

7    litigation, or with respect to information protected by Fed. R. Civ.

8    P. 26(b)(4), testifying experts in connection with this litigation.

9    3.    <u>Privilege Log Requirements:</u>

10    a.    Consistent with Fed. R. Civ. P. 26(b)(5) and Local Rule 26(d), and

11    unless otherwise agreed by the Parties or Ordered by the Court,

12    Privilege Logs shall contain the following information for each

13    Document withheld or redacted on grounds other than those

14    specified in ¶II.K.1(1)-(3) and those outlined in V.3.c:

15    i.    a sequential number associated with each privilege log record;

16    ii.    the date of the Document or ESI;

17    iii.    the Bates number of the Documents or ESI redacted;

18    iv.    the identity of persons who sent (and, if different, the identity of

19    all persons who authored or signed) the Document or ESI and the

20    addressees, recipients, copyees, and blind copyees (with senders,

21    signers, authors, addressees/recipients, copyees, and blind

22    copyees, each separately identified by those categories); the

23    Document type (i.e., letter or memorandum);

24    v.    All attorneys shall be noted with an asterisks (*) or other

25    identifier or shall be listed at the top of any privilege log in

26    which they appear;

27    vi.    the general subject matter of the information contained in the

28    Document or ESI and a description sufficient to enable other

parties to assess the privilege claim, without revealing information itself privileged or protected;

    vii.    the type or nature of the privilege or immunity asserted (i.e., attorney-client privilege or work-product doctrine); and

    viii.    an indication of whether the Document has been redacted or withheld in its entirety.

b.  Where available for any category specified in **¶V.3.a**, objective metadata may be used to populate the values for **V.3.a. (i) — (v)** on a producing Party's Privilege Log, as long as such metadata is reasonably comprehensible.

c.  For email threads suppressed in accordance with **IV.D(1)**, the producing Party will log an entry for each lesser included email for which a privilege or protection is asserted.

d.  For withheld documents in the following categories, a producing Party need not provide a description of a document or identify the type of privilege or immunity asserted as outlined in **V.3.a**, but instead may provide the "subject" and "filename" field for each document; however, the Receiving party may request full **V.3.a** logging of specific withheld documents, which the producing Party then shall provide absent good cause not to do so:

    i.    Communications with Outside Counsel;

    ii.    Communications solely among in-house counsel regarding and limited to litigation, anticipated litigation, or regulatory proceedings;

    iii.    Communications from in-house counsel to non-attorney employees for the exclusive purpose of forwarding privileged communications from outside counsel.

4.    **Challenges to Privilege Claims:** Should a receiving Party, in good faith, have reason to believe a particular entry or category of entries on a Privilege Log or its associated Document does not reflect privileged information, or that the entry does not provide sufficient information to assess any such claim of privilege, the receiving Party may request additional information, and the producing Party will not unreasonably refuse to provide more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5). Should a receiving Party, in good faith, have reason to believe a particular redaction or withheld Document is responsive and does not reflect privileged or protected discoverable information after the producing Party has provided the additional information, the requesting Party shall provide (i) the producing Party with its justification for believing the redaction or withheld Document may be responsive and not privileged or protected, and (ii) the producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or Document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. The requesting Party shall not challenge the producing Party's privilege log or any individual entries thereon without following the procedures set forth in this protocol, unless based solely on material non-compliance with this ESI Protocol. The withdrawal of an asserted privilege or protection following a challenge and subsequent meet and confer shall not be a basis to challenge other Documents included in the privilege log, except for duplicate documents.

## VI.    MISCELLANEOUS PROVISIONS

A.    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

**B.**   **Variations or Modifications:** Variations from this ESI Protocol may be required. Any practice or procedure set forth herein may be varied by agreement of the affected Plaintiff and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

**C.**   **Additional data sources:** The Parties will meet and confer to determine the production format of other data sources (i.e. collaboration tools, mobile data) if necessary.

**APPENDIX A**
**Required Metadata Fields**

| Field Name | Field Description | Hard Copy | Email | Non-e-mail ESI |
|---|---|---|---|---|
| BegBates | Beginning Bates number (including Prefix) | x | x | x |
| EndBates | Ending Bates number (including Prefix) | x | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range | x | x | x |
| EndAttach | Ending Bates number of the last document in attachment range | x | x | x |
| Custodian/Source | Name of custodian(s) or source of email(s) or file(s) produced | x | x | x |
| File Type | The type of document | x | x | x |
| Subject | Subject line extracted from an email message | | x | |
| From | From field extracted from an email message | | x | |
| To | To or Recipient extracted from an email message | | x | |
| CC | Carbon Copy ("Cc") field extracted from an email message | | x | |
| BCC | Blind Carbon Copy ("Bcc") field extracted from an email message | | x | |
| Sent Date | Sent date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | | x | |
| Received Date | Received date and time of e-mail message (Or, if a party has 2 separate fields, date and time can be in separate fields) | | x | |
| File Name | Name of file as saved on system | | | x |
| Author | The author of the document | | | x |
| File Extension | The document extension extracted from document properties | | | x |

| | | | | |
|---|---|---|---|---|
| Folder Path | The folder location of the document on the original computer | | x | x |
| Redactions | Yes/No determination advising if the document contains redactions | x | x | x |
| Confidentiality | Type of Confidentiality being claimed | x | x | x |
| Last Modified Date | The application recorded date and time on which the document was last modified (Or, if a party has 2 separate fields, date and time can be in separate fields) | | | x |
| Created Date | The application recorded date and time on which the document was created (Or, if a party has 2 separate fields, date and time can be in separate fields) | | | x |
| Hash Value | MD5 or SHA-1 hash value used to dedupe the data | | x | x |
| Page Count | Number of pages in the produced document | x | x | x |
| Native Link (if natives are exchanged) | Relative path to any files produced in native format, such as Excel spreadsheets | | | x |
| Text Path | Relative path to any OCR/extracted text files in the production set | x | x | x |
| Duplicate Custodian | When globally deduping, this field will list for the Producing Party the other custodians that possessed a copy of the document. | | x | x |

1   **IT IS SO STIPULATED,** through Counsel of Record.

2   Dated:  August 4, 2022                    By:   _/s/ Bonnie Lau_
                                                    Bonnie Lau
3

4                                               Bonnie Lau
                                                Ian Bausback
5                                               David E. Grothouse
                                                MORRISON & FOERSTER LLP
6                                               425 Market Street
                                                San Francisco, California 94105-2482
7                                               Telephone: 415.268.7000
                                                Facsimile: 415.268.7522
8                                               Email: blau@mofo.com
                                                Email: ibausback@mofo.com
9                                               Email: dgrothouse@mofo.com

10                                              Steven Bizar (_pro hac vice_)
                                                Agnese Nadalini (_pro hac vice_)
11                                              David Costigan (_pro hac vice_)
                                                DECHERT LLP
12                                              2929 Arch St.
                                                Philadelphia, PA 19104
13                                              Telephone:  215.994.4000
                                                Facsimile:   215.994.2222
14                                              Email: steven.bizar@dechert.com
                                                Email: agnese.nadalini@dechert.com
15                                              Email: david.costigan@dechert.com

16                                              Nathan Richardson (_pro hac vice_)
                                                Shari Ross Lahlou (_pro hac vice_)
17                                              DECHERT LLP
                                                1900 K Street, NW
18                                              Washington, DC 20006
                                                Telephone:  202.261.3300
19                                              Facsimile:   202.261.3333
                                                Email: Nathan.richardson@dechert.com
20                                              Email: shari.lahlou@dechert.com

21                                              _Attorneys for Defendants_
                                                _COMMERCIAL METALS COMPANY;_
22                                              _CMC STEEL FABRICATORS, INC.;_
                                                _CMC STEEL US, LLC_

23

24

25

26

27

28

1     Dated:  August 4, 2022         FARELLA BRAUN + MARTEL LLP

2                      By:   */s/ Christopher C. Wheeler*
                            Christopher C. Wheeler

3

4                        Christopher C. Wheeler
                       FARELLA BRAUN + MARTEL LLP

5                        235 Montgomery Street, 17th Floor
                       San Francisco, CA 94104

6                        Telephone: (415) 954-4400
                       Facsimile: (415) 954-4480

7                        Email: cwheeler@fbm.com

8                        Benjamin D. Brown
                       Daniel A. Small (*pro hac vice*)

9                        Daniel McCuaig (*pro hac vice*)
                       COHEN MILSTEIN SELLERS & TOLL, PLLC

10                        1100 New York Ave., N.W., Suite 500,
                       East Tower

11                        Washington, D.C. 20005
                       Telephone: (202) 408-4600

12                        Facsimile: (202) 408-4699
                       Email: bbrown@cohenmilstein.com

13                        Email: dsmall@cohenmilstein.com
                       Email: dmccuaig@cohenmilstein.com

14                        Matthew W. Ruan
                       COHEN MILSTEIN SELLERS & TOLL, PLLC

15                        88 Pine St., Ste 1400
                       New York, NY 10005

16                        Telephone: (212) 838-7797
                       Facsimile: (212) 838-7745

17                        Email:  mruan@cohenmilstein.com

18                        *Attorneys for Plaintiff*
                       *PACIFIC STEEL GROUP*

19

20

21

22

23

24

25

26

27

28

**PURSUANT TO THE STIPULATION**, **IT IS SO ORDERED** that this ESI Protocol shall govern the Parties in the Litigation.

Dated:  9/13/2022

The Honorable Haywood S. Gilliam, Jr.

United States District Judge