Steven Bizar (*pro hac vice*)
Agnese Nadalini (*pro hac vice*)
David Costigan (*pro hac vice*)
DECHERT LLP
2929 Arch St.
Philadelphia, PA 19104
Telephone: 215.994.4000
Facsimile: 215.994.2222
Email: steven.bizar@dechert.com
Email: agnese.nadalini@dechert.com
Email: david.costigan@dechert.com

Shari Ross Lahlou (*pro hac vice*)
Nathan Richardson (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Telephone: 202.261.3300
Facsimile: 202.261.3333
Email: shari.lahlou@dechert.com
Email: nathan.richardson@dechert.com

Joseph Trujilo (SBN 305170)
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, California 94104
Telephone: 415.262.4500
Facsimile: 415.262.4555
Email: joseph.trujillo@dechert.com

Bonnie Lau (SBN 246188)
David E. Grothouse (SBN 338805)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: blau@mofo.com
Email: dgrothouse@mofo.com

*Attorneys for Defendants*
*COMMERCIAL METALS COMPANY;*
*CMC REBAR WEST*
*CMC STEEL US, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>        Plaintiff,<br><br>     v.<br><br>COMMERCIAL METALS COMPANY, et al.,<br><br>        Defendants. | Case No. 4:20-cv-07683-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Judge:**    Hon. Haywood S. Gilliam, Jr.<br>**Date:**     December 7, 2023<br>**Time:**     2:00 pm<br>**Courtroom:** 2, 4th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 7, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, Jr., District Judge of the United States District Court for the Northern District of California, Oakland Division, located at Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Commercial Metals Company, CMC Rebar West and CMC Steel US, LLC (collectively "CMC" or "Defendants") will, and hereby do, move the Court for an Order under Federal Rule of Civil Procedure 56 granting summary judgment, in whole or in part, on the claims against them. This motion is made and based upon this Notice of Motion and Motion for Summary Judgment, the accompanying Declaration of Joseph Trujillo and exhibits attached thereto, the complete files and records in this action, oral argument of counsel, and such other and further matters as the Court may consider.

Dated: November 2, 2023

By: */s/ Steven Bizar*
Steven Bizar (*pro hac vice*)
David Costigan (*pro hac vice*)
Agnese Nadalini (*pro hac vice*)
Shari Ross Lahlou (*pro hac vice*)
Nathan Richardson (*pro hac vice*)
Joseph D. Trujillo (SBN 305170)
DECHERT LLP

By: */s/ Bonnie Lau*
Bonnie Lau (SBN 246188)
David E. Grothouse (SBN 338805)
MORRISON & FOERSTER LLP

*Attorneys for Defendants*

*COMMERCIAL METALS COMPANY; CMC REBAR WEST*
*CMC STEEL US, LLC*

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 3

I.   Rebar Production .......................................................................................... 3

II.   Rebar Sourcing and Supply ........................................................................ 4

III.   CMC and Danieli ........................................................................................ 5

IV.   PSG's Mill Efforts ...................................................................................... 7

LEGAL STANDARD ............................................................................................... 12

ARGUMENT ............................................................................................................ 12

I.   PSG's Antitrust Claims Fail Because It Cannot Show CMC Has Market or Monopoly Power in a Properly Defined Geographic Market. ............................... 12

A.   PSG's Antitrust Claims Fail ██████████████████ ████████████ ............................................................. 13

B.   PSG's Section 1 and Section 2 Claims Also Fail Because PSG Cannot Show That CMC Has Market or Monopoly Power. ...................... 17

C.   PSG's Fallback Attempted Monopolization Claim Also Fails ................. 19

II.   PSG's Antitrust Claims Also Fail Because PSG Cannot Show Harm to Competition. .................................................................................................. 20

III.   CMC Is Entitled to Summary Judgment on PSG's State Law Claims.................. 24

A.   PSG's Cartwright Act and UCL Claims Fall with its Antitrust Claims........................................................................................................ 24

B.   CMC Is Entitled to Summary Judgment on PSG's Interference Claim. ........................................................................................................ 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
No. 16-0923, 2018 WL 11230167 (N.D. Cal. May 21, 2018) ............................................... 18

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*,
60 Cal. Rptr. 2d 830 (Cal. Ct. App. 1997) ....................................................................... 25

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ....................................................................................................... 16

*Christy Sports, LLC v. Deer Valley Resort Co.*,
555 F.3d 1188 (10th Cir. 2009) ....................................................................................... 21

*City of San Jose v. Off. of the Com'r of Baseball*,
776 F.3d 686 (9th Cir. 2015) .......................................................................................... 24

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) ........................................................................................ 24

*Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*,
99 F.3d 937 (9th Cir. 1996) ........................................................................................... 18

*Determined Prods., Inc. v. R. Dakin & Co.*,
514 F. Supp. 645 (N.D. Cal. 1979) ....................................................................... 21, 22, 24

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ........................................................................................ 17

*Dunafon v. Delaware McDonald's Corp.*,
691 F. Supp. 1232 (W.D. Mo. 1988) ............................................................................... 21

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ....................................................................................................... 18

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .......................................................................................... 17

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
44 F.4th 959 (10th Cir. 2022) ........................................................................................ 21

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ........................................................................... 13, 17, 20, 21

*FTC. v. Tenet Health Care Corp.*,
186 F.3d 1045 (8th Cir. 1999) ........................................................................................ 14

*Gen. Bus. Sys. V. N. Am. Philips Corp.*,
   699 F.2d 965 (9th Cir. 1983) .................................................................................... 24

*Ginzburg v. Mem'l Healthcare Sys., Inc.*,
   993 F. Supp. 998 (S.D. Tex. 1997) ........................................................................... 13

*Horst v. Laidlaw Waste Sys., Inc.*,
   917 F. Supp. 739 (D. Colo. 1996) ............................................................................ 20

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) .................................................................................. 18

*It's My Party, Inc. v. Live Nation, Inc.*,
   811 F.3d 676 (4th Cir. 2016) .................................................................................... 15

*Johnson v. Altamirano*,
   418 F. Supp. 3d 530 (S.D. Cal. 2019) ...................................................................... 25

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (2003) ................................................................................................... 25

*Malaney v. UAL Corp.*,
   No. 10-2858, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010) ................................... 15

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
   468 U.S. 85 (1984) ................................................................................................... 17

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) .................................................................................. 13

*Omega Environmental, Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ............................................................................ 21, 24

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) .................................................................................. 20

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................. *passim*

*RSR Corp. v. FTC*,
   602 F.2d 1317 (9th Cir. 1979), *cert. denied*, 445 U.S. 927 (1980) ......................... 16

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .................................................................................... 20

*SCFC ILC, Inc. v. Visa USA, Inc.*,
   36 F.3d 958 (10th Cir. 1994) .................................................................................... 17

*Seagood Trading Corp. v. Jerrico, Inc.*,
   924 F.2d 1555 (11th Cir. 1991) ........................................................................... 22, 23

*Sidibe v. Sutter Health*,
  No. 12-04854, 2021 WL 879875 (N.D. Cal. Mar. 9, 2021)..................................................20

*Sole Energy Co. v. Petrominerals Corp.*,
  26 Cal. Rptr. 3d 798 (Cal. Ct. App. 2005) ............................................................................25

*Stiles v. Walmart, Inc.*,
  639 F. Supp. 3d 1029 (E.D. Cal. 2022) ................................................................................25

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961) ..............................................................................................................13

*Tanaka v. Univ. of S. California*,
  252 F.3d 1059 (9th Cir. 2001)...............................................................................................15

*Tunis Bros. Co. v. Ford Motor Co.*,
  952 F.2d 715 (3d Cir. 1991) ..................................................................................................14

*United States v. United States Sugar Corp.*,
  No. 21-1644, 2022 WL 4544025 (D. Del. Sept. 28, 2022), *aff'd on other
  grounds*, 73 F.4th 197 (3d Cir. 2023)..............................................................................14, 15

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  49 Cal. Rptr. 2d 793 (Cal. Ct. App. 1996) ...........................................................................25

### INTRODUCTION

Plaintiff Pacific Steel Group ("PSG") brought this case because it was temporarily prevented from contracting with its preferred vendor to build one specific type of steel mill in one part of the country.  It has spun its frustration into a grab bag of federal antitrust claims and state law claims piggybacked on top of them.  Antitrust law, however, is concerned with preserving competition, not ensuring that a company can seek hundreds of millions in damages every time it cannot immediately satisfy its idiosyncratic commercial preferences.  With discovery now complete, undisputed facts show that PSG cannot possibly establish the basic elements of an antitrust claim—including a properly-defined relevant market and harm to competition—because the conduct it challenges is simply not what the antitrust laws were designed to redress.

First, PSG has failed to come up with evidence substantiating its alleged relevant geographic market.  This is not a new flaw in PSG's case:  CMC previously moved to dismiss PSG's antitrust claims because it excluded key rebar suppliers from the alleged market.  In deciding that motion, the Court acknowledged that PSG's proposed market "seem[ed] arbitrary" and "merit[ed] real scrutiny," but deferred ruling until after discovery.  *See* Dkt. 92 at 11.  Now, undisputed facts confirm just how contrived PSG's proposed market truly is.  The crux of an antitrust geographic market is whether the proposed market encompasses the "area of effective competition where buyers can turn for alternate sources of supply."  *Id.* ███████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████  PSG's disregard for foundational antitrust principles in pressing its bogus geographic market is grounds on its own to grant summary judgment on all of PSG's antitrust claims.

Second, to prevail on its antitrust claims, PSG must also show that CMC had sufficient market power or monopoly power, depending on the claim.  PSG designed its implausible proposed market precisely so it could argue CMC has a sufficiently high market share to indicate the requisite power. ██████████████████████████████████████████████████████████████████

DEFS.' MOTION FOR SUMMARY JUDGMENT
Case No. 4:20-cv-07683-HSG

1

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████

5 ██████████████████████████████████████ PSG's inability to prove CMC's market

6 or monopoly power is another, independent reason to grant summary judgment on PSG's antitrust

7 claims.

8       Third, PSG's antitrust claims also fail because it cannot establish that CMC's conduct

9 harmed competition.  Antitrust law exists to protect the competitive process, not the business

10 preferences of individual market participants.  PSG has staked its claims on the notion that CMC

11 anticompetitively foreclosed PSG from manufacturing rebar in its (defective) proposed market.  The

12 Court considered this dubious PSG theory at the Rule 12 stage and declared it a "close call."  *See*

13 Dkt. 92 at 18. █████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ████████████

21       Finally, PSG's tagalong state law claims fail as well.  All of them are premised on the same

22 conduct underlying its antitrust claims repackaged as state law claims.  PSG's tortious interference

23 claim also fails because it cannot show that it had any existing economic relationship that CMC

24 could have interfered with.

25       This Court acknowledged the weaknesses of PSG's antitrust claims at the Rule 12 stage but

26 afforded PSG the opportunity for discovery.  Now, at summary judgment, PSG can no longer hide

27 behind its allegations.  The evidence reveals that PSG cannot establish the foundational elements of

28 its antitrust claims.  The Court should accordingly grant summary judgment in CMC's favor.

1

**FACTUAL BACKGROUND**

2 **I.      Rebar Production**

3      1.      Steel reinforcing bar (rebar) is produced in "minimills."  Most minimills utilize a

4 two-step process to create rebar. ████████████████████████████████████

5 █████████████████████████████████████████ █████████████████

6 ███████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████

20 ██████████████████████

21   ██   ███████████████████████████████████████

22 ███████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████████

26 ███████████████████████████████████████████████████████

27 _____

28 [1]      Citations to "Ex. #" refer to the accompanying Declaration of Joseph Trujillo in support of this motion.



**II.     Rebar Sourcing and Supply**

PSG's alleged relevant geographic market

1   ("ARGM") for its antitrust claims is a 500-mile radius around Mojave, CA, the site of its proposed

2   mill.  *See* Dkt. 76, First Amended Complaint ["FAC"] ¶ 120. ████████████████████

3   ███████████████████████████████████████████████████████████

4   ████████████████████████████████████

5   ████████████████████████████████████████[4]



III.    **CMC and Danieli**

_____

[4]  ██████████████

[5]  █████████████████████████████████████████████



1  █████████████████████████████████████████████████████

2  █████████████████████████████████████████████████████

3  █████████████████████████████████████████████████████

4  █████████████████████████████████████████████████████

5  █████████████████████████████████████████████████████

6  ████████████████████████████████  ██████████████████████

7  █████████████████████████████████████████████████████

8  █████████████████████████████████████████████████████

9  █████████████████████████████████████████████████████

10 █████████████████████████████████████████████████████

11 ███████████████████████████

**IV.    PSG's Mill Efforts**

9.    PSG was founded in 2014 and operates as a fabricator and installer of rebar.  *See* FAC ¶ 19. █████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

**Initial Negotiations with Danieli**

10.    PSG had preliminary discussions with Danieli regarding construction of a mill in late 2019. *See, e.g.,* FAC ¶ 93. ████████████████████████

█████████████████████████████████  ████████████████████████

_____

[8] ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

[9] █████████████████████████████████████████████████████









1

## LEGAL STANDARD

2      A court should grant summary judgment if "there is no genuine issue as to any material fact

3 and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

4 judgment is appropriate "[i]f the moving party shows that there is an absence of evidence to support

5 the plaintiff's case" and the nonmoving party cannot produce "evidence sufficient to sustain a jury

6 verdict on those issues for which it bears the burden at trial."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51

7 F.3d 1421, 1435 (9th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

8

## ARGUMENT

9  **I.     PSG's Antitrust Claims Fail Because It Cannot Show CMC Has Market or Monopoly
       Power in a Properly Defined Geographic Market.**

10

11      To prevail on its Sherman Act claims (Counts 1-4), PSG bears the burden of proving the

12 existence of a relevant market and that CMC has meaningful power in that market. ███████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████    Second, PSG's antitrust claims also fail because it cannot show that CMC had

20 market power (as required for its Section 1 claim) or monopoly power (as required for its Section 2

21 claim). ██████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████    Because PSG has failed

27 to substantiate its allegations on a proposed relevant market or market/monopoly power, the Court

28 should grant summary judgment on its Sherman Act claims.

**A.    PSG's Antitrust Claims Fail** ████████████████████████████
████████████████████████████████

PSG is pursuing claims under Sections 1 and 2 of the Sherman Act, both of which require PSG to prove the existence of a relevant geographic market.  *See FTC v. Qualcomm Inc*., 969 F.3d 974, 992 (9th Cir. 2020) ("A threshold step in any antitrust case is to accurately define the relevant market" because otherwise, "there is no way to measure [the defendant's] ability to lessen or destroy competition.") (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)); *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1057 n.3 (9th Cir. 2008) ("the 'relevant market' and 'market power'" requirements of the Sherman Act "apply identically" under Sections 1 and 2).[14]  PSG's alleged relevant geographic market (ARGM) is a 500-mile bubble around Mojave, California (where PSG wants to build its MiDa mill).  *See* FAC ¶ 120.[15] ████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████

PSG's proposed geographic market is legally defective for precisely the reasons the Court recognized at the Rule 12 stage—i.e., that it "seeks to exclude the rebar sales of all manufacturers outside the radius—regardless of how much rebar those manufacturers ship into the market."  Dkt. 92 at 10.  Antitrust geographic markets must cover the "area of effective competition where buyers can turn for alternate sources of supply."  *Id.* at 8 (quoting *Tanaka v. Univ. of S. California,* 252 F.3d 1059, 1063 (9th Cir. 2001)); *see also Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) ("[T]he area of effective competition . . . must be charted by careful selection of the market area . . . to which the purchaser can practicably turn for supplies.").[16]

---

[14]    While an antitrust relevant market also includes product market component, this motion challenges only PSG's relevant geographic market.

[15] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

[16]    *See also Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1013 (S.D. Tex. 1997) (granting summary judgment when plaintiff's expert only "analyze[d] the relevant market from

PSG's proposed geographic market wishes away this fundamental tenet of antitrust law.  The undisputed data reveals an incontrovertible and dispositive fact: ███████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████ █████████████████
████████████████████████ ███████████████████
███████████████████████████████████████████
███████ █████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████ ████████

_____

[plaintiff's] viewpoint" because "[e]vidence of the *competitor's* perspective is not sufficient" and "a geographic market is determined by inquiring into 'the commercial realities faced by *consumers*.'").

[17] ███████████████████████████████████████
██████████████████████████

[18] ███████████████████████████████████████
███████████████████████████████████████████
████████████████████

[19]    The 2010 Horizontal Merger Guidelines describe two ways of defining geographic markets: (1) based on the location of suppliers or (2) based on the location of customers.  *See* U.S. Dep't of Justice & Fed. Trade Comm'n, Horizontal Merger Guidelines ["HMG"] §§ 4.2.1-4.2.2.   (2010), https://www.justice.gov/atr/horizontal-merger-guidelines-08192010#4g. ███████████████████████████████████████████
████████████████████████  Dkt. 92 at 8-9 ("Under either approach the geographic market and market share, when taken together, must account for the relevant firms who supply the market.").

[20]    *See also Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991) (reversing denial of summary judgment where evidence showed customers "did not limit themselves to [plaintiffs'] restricted geographic region"); *FTC. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1053-

1 ███████████████████████████████████████████████████

2 ████████████████████████████████    █████████████████████

3 ██████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 ████████████████████████████████ *See Malaney v. UAL Corp.*, No. 10-2858,

2010 WL 3790296, at *11 (N.D. Cal. Sept. 27, 2010) (rejecting geographic market when "none of

the behavior engaged in by the plaintiffs" supported their market definition: "plaintiffs' own

experiences are consistent with the position taken by defendants—that competition from adjacent

[locations] disciplines pricing and must be considered when defining the relevant market"); *Tanaka*,

252 F.3d at 1063 (rejecting geographic market when "[plaintiff]'s own experience strongly suggests

that the relevant geographic market is national in scope").

15 ██████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████

17 ██████████████████████████████  But relying on purported experts who ignore the basic

commercial realities of the market is insufficient. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d

1421, 1435-36) (9th Cir. 1995) ("In the context of antitrust law, if there are undisputed facts about

the structure of the market that render the inference economically unreasonable, the expert opinion

is insufficient to support a jury verdict."); *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 683

(4th Cir. 2016) (rejecting Mr. Elhauge's proposed geographic markets[21] that "coincidentally fit

plaintiff's precise circumstances," and explaining "[n]o party can expect to gerrymander its way to

---

54 (8th Cir. 1999) (finding "absurd" district court's acceptance of proposed geographic market when "over twenty-two percent of people . . . already use hospitals outside the FTC's proposed market"); Areeda & Hovenkamp, Antitrust Law – An Analysis of Antitrust Principles and Their Application ¶ 552 ("Persistent one-way sales from one region to the other ordinarily indicate that the full output of producers in the 'exporting' region should be included when measuring the power of a firm in the 'importing' region.").

[21] *See* Ex. 66, Transcript of August 31, 2023 Deposition, Einer Elhauge 307:15-308:24.

an antitrust victory without due regard for market realities."); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them.").

Ignoring commercial reality is precisely what Mr. Elhauge does. ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See RSR Corp. v. FTC.*, 602 F.2d 1317, 1322-23 (9th Cir. 1979), *cert. denied*, 445 U.S. 927 (1980) (finding a broader geographic market appropriate given that "regional pricing patterns . . . are interrelated").

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ This Court previously observed that PSG's *Cellophane* fallacy arguments are "not persuasive" and are "of questionable, if any, relevance to this case." *See* Dkt. 92 at 13. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1 █████████████████████████████████████████████████████████

2 █████████████████████████████████████████████████████████

3 █████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████████

6 █████████████████████████████████████████████████████████

7 █████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████

9 █████████████████████████████████████████████████████████

10 █████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████[22]

In short, Mr. Elhauge's opinion cannot save PSG's legally defective proposed geographic market, and CMC is entitled to summary judgment on PSG's antitrust claims.

### B.   PSG's Section 1 and Section 2 Claims Also Fail Because PSG Cannot Show That CMC Has Market or Monopoly Power.

To prevail on its Sherman Act claims, PSG must also show that CMC has market power (for its Section 1 claim) or monopoly power (for its Section 2 claim).  *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 982-83 (9th Cir. 2023); *Qualcomm Inc.*, 969 F.3d at 990-92.  "Market power is the ability to raise prices above those that would be charged in a competitive market."  *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 109 n.38 (1984). Monopoly power is the ability to control prices or exclude competition.  *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022).  Conversely, where a market includes numerous competing suppliers, like this one, no one supplier is likely to have market power—let alone monopoly power—because competition constrains pricing.  *See Rebel Oil*, 51 F.3d at 144; *SCFC*

---

[22] ████████████

27 █████████████████████████████████████████████████████████

28 █████████████████████████████████████████████████████████

*ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 966 (10th Cir. 1994) ("the ability of consumers to turn to other suppliers restrains a firm from raising prices above the competitive level").

Calculating market shares in a properly defined relevant market is "the starting point for assessing market power." *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 950-51 (9th Cir. 1996).  As the Court recognized at the Rule 12 stage, CMC's market share must be assessed based on a market that includes the "relevant firms who supply the market."  Dkt. 92 at 8-9. ███

Nor can PSG prove market or monopoly power directly.  Such proof is tantamount to proving

---

[23] █████████████████████████████████████████████████████

[24]  *See* Shehadeh Rep. Ex. 29.

[25] █████████████████████████████████████████████████████

harm to competition—i.e., showing reduced output or higher prices.  *See Rebel Oil*, 51 F.3d at 1434 ("One type of proof is direct evidence of the injurious exercise of market power.  If the plaintiff puts forth evidence of restricted output and supracompetitive prices, that is direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power"). ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████  In short, PSG cannot establish that CMC had market or monopoly power in a properly defined market.

### C.   PSG's Fallback Attempted Monopolization Claim Also Fails

To establish its attempted monopolization claim, PSG must prove, among other things, "(1) specific intent to monopolize; (2) predatory or anticompetitive conduct directed at that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil*, 51 F.3d at 1433.  As discussed below, PSG cannot prove that CMC's conduct caused antitrust injury by harming competition, meaning all of its Section 2 claims (including PSG's alleged

---

[26] ██████████████████████████████████████████

1 "conspiracy to monopolize") fail. But its attempted monopolization claim also fails because PSG

2 cannot establish that CMC had a dangerous probability of achieving monopoly power.

3 ████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ██████████████████    ██████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 Accordingly, the Court should likewise grant summary judgment on PSG's attempted

18 monopolization claim.

19 **II.     PSG's Antitrust Claims Also Fail Because PSG Cannot Show Harm to Competition.**

20        To succeed on its Section 1 or Section 2 claims, PSG must also prove that CMC's conduct

21 harmed competition—that is, "harm[ed] the competitive *process* and thereby harm[ed] consumers."

22 *Qualcomm*, 969 F.3d at 989-90 (emphasis in original); *Paladin Assocs., Inc. v. Montana Power Co.*,

23 328 F.3d 1145, 1158 (9th Cir. 2003) (granting summary judgment because "there is no antitrust

24 injury" where "defendant's conduct harms the plaintiff without adversely affecting competition

25 generally"); *Rebel Oil*, 51 F.3d at 1433 ("[A]n act is deemed *anticompetitive* . . . only when it harms

26 both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their

27 quality.") (emphasis in original). "The intent proscribed by the antitrust laws lies in the purpose to

28 harm competition in the relevant market, not to harm a particular competitor." *Rutman Wine Co. v.*

1    *E. & J. Gallo Winery,* 829 F.2d 729, 734 (9th Cir. 1987).   Undisputed facts preclude PSG from

2    establishing harm to competition as a matter of law.

3    ███████████████████████████████████████████████████████

4    ███████████████████████████████████████  As the Court recognized, antitrust

5    precedent on vertical exclusive dealing arrangements provides the best framework for assessing

6    competitive harm here.  *See* Dkt. 92 at 18-19 ("the Court found exclusive dealing precedent to be

7    the closest analogue to [PSG's] claims").  "The main antitrust objection to exclusive dealing is its

8    tendency to 'foreclose' existing competitors or new entrants from competition in the covered portion

9    of the relevant market during the term of the agreement."  *Omega Environmental, Inc. v. Gilbarco,*

10   *Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997); *Qualcomm*, 969 F.3d at 1003 (explaining exclusive

11   dealing "violates the Sherman Act . . . only if its effect is to foreclose competition in a substantial

12   share of the line of commerce affected.").  Because antitrust law's concern is harm to competition,

13   not harm to competitors, it does not exist to satisfy one company's idiosyncratic preferences for how

14   it wishes to operate in the marketplace.  *See Determined Prods., Inc. v. R. Dakin & Co.*, 514 F. Supp.

15   645, 648 (N.D. Cal. 1979) (explaining that antitrust laws do not guarantee the right to the "best,

16   most efficient and cheapest source of supply").[27]

17   ███████████████████████████████████████████████████████

18   

_____

19   [27]    Exclusive dealing arrangements are generally legal under antitrust law because they can

20   promote competition.  *See Qualcomm*, 969 F.3d at 1003 (noting the "well-recognized economic
     benefits to exclusive dealing arrangements"); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,

21   44 F.4th 959, 983-84, 988 (10th Cir. 2022) (explaining that exclusive dealing arrangements are
     "frequently upheld when challenged on antitrust grounds" because of their well-recognized

22   procompetitive effects, especially when they do not substantially foreclose alternatives); Areeda &
     Hovenkamp ¶ 1810 (arguing that exclusive-dealing contracts "permit vertically related firms to

23   share risk" and "should be presumptively lawful in all but a few carefully defined circumstances").

24   █████████████████████████████████████████████████████████

25   █████████████████████████████████████████████████████████

26   █████████████████████████████████████████████████████████

27   █████████████████████████████████████████████████████████

28   █████████████████████████████████████████████████████████

1  ███████████████████████████████████████████████████

2  ███████████████████████████████████████████████████

3  ███████████████████████████████████████████████████

4  █████████████████████████████████

5  ███████████████████████████████████████████████

6  ███████████████████████████████████████████████████

7  ███████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 ███████████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 ████████████████████████████████ ██████████████████

17 ███████████████████████████████████████████████████

18 ███████████████████████████████████████████████████

19 ██████████████████████████  Indeed, as discussed above, the antitrust laws do not

20 give competitors the right to do business on whatever terms they prefer.  *See Seagood Trading Corp.*

21 *v. Jerrico, Inc.*, 924 F.2d 1555, 1572 (11th Cir. 1991) (an arrangement under which a would-be

22 competitor is "simply inhibited from competing in one way" does not violate the antitrust laws").

23 ███████████████████████████████████████████████

24 ███████████████████████████████████████████████████

25

26 _____

27 [28] ██████████████████████████████████████████████

28 ███████████████████████████



*Cf. Rebel Oil*, 51 F.3d at 1441 (explaining that "summary disposition may be appropriate" when "there is undisputed evidence indicating that competitors have expanded output in the recent past").

The fact that the CMC-Danieli 2020 exclusivity provision did not foreclose PSG or any other competitor from manufacturing and selling rebar, including to customers in PSG's proposed geographic market, is fatal to its antitrust claims. Decades of case law holds that exclusive dealing arrangements do not violate the antitrust laws when the supposedly "foreclosed" competitors have viable options to compete. *See Omega*, 127 F.3d at 1163 ("These alternatives eliminate substantially any foreclosure effect [the exclusive dealing arrangement] might have."); *Determined Prods.*, 514 F. Supp. at 648 (holding that the "indisputable existence of alternate sources of supply negates any anti-competitive inference" from an exclusivity agreement); *Gen. Bus. Sys. V. N. Am. Philips Corp.*, 699 F.2d 965, 979 (9th Cir. 1983) (holding that even if alternatives "might not have been available on the same terms from other suppliers," the fact that "[a]lternatives did exist" meant an exclusivity did not amount to "economic injustice"). ███████████████████████████████ ███████████████████████████  ████████████████████████████████████████ its "foreclosure" theory and its antitrust claims fail as a matter of law.

## III.     CMC Is Entitled to Summary Judgment on PSG's State Law Claims

### A.      PSG's Cartwright Act and UCL Claims Fall with its Antitrust Claims

PSG also alleges that CMC violated the Cartwright Act, Cal. Bus. & Prof. Code § 16720, and California's Unfair Competition Law ("UCL")'s prohibition of "unlawful" and "unfair" actions. *Id.* § 17200. PSG has staked those claims on the same conduct as its antitrust claims, so summary judgment is proper for the same reasons detailed above. *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1160 (9th Cir. 2001) (affirming summary judgment on federal antitrust and Cartwright Act claims for the same reasons); *City of San Jose v. Off. of the Com'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) ("[When] the same conduct is alleged to be both an antitrust violation and an 'unfair' business act . . . . [a]n independent claim under California's UCL is . . . barred so long as [the conduct is] lawful under the antitrust laws.") (citation omitted).

### B.      CMC Is Entitled to Summary Judgment on PSG's Interference Claim.

The Court should also grant summary judgment on PSG's claim for interference with prospective economic advantage. Among other elements, the claim requires showing: (1) "[a]n economic relationship between the plaintiff and some third party, with the probability of future

economic benefit to the plaintiff"; and (2) "independently wrongful," "intentional acts on the part of the defendant designed to disrupt the relationship." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950, 953 (2003) (citation omitted).  PSG can prove neither.

First, while PSG challenges CMC and Danieli's August 2020 exclusivity provision, PSG did not have any economic relationship with Danieli at the time. ██████████████████████ ███████████████████████  That is not enough to sustain an intentional interference claim. ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

Second, as explained above, CMC's actions were not "independently wrongful" because they do not violate any other laws, including the antitrust laws.  Therefore, they fall under the "competition privilege," which "protects one from liability for inducing a third person not to enter into a prospective contractual relation with a business competitor." *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 60 Cal. Rptr. 2d 830, 838 (Cal. Ct. App. 1997); *Stiles v. Walmart, Inc.*, 639 F. Supp. 3d 1029, 1064 (E.D. Cal. 2022) (granting summary judgment on intentional interference claim for inability to show wrongfulness after also granting summary judgment on antitrust claims).  Because PSG cannot satisfy either element of its interference claim, CMC is entitled to summary judgment.

## **CONCLUSION**

For the reasons above, the Court should grant summary judgment in CMC's favor on all of PSG's claims in this case.

---

[31] ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████

1

2    Dated:    November 2, 2023                    Respectfully submitted,

3                                                  By:  /s/ *Steven E. Bizar*
                                                   Steven E. Bizar (*pro hac vice*)
4                                                  David Costigan (*pro hac vice*)
                                                   Agnese Nadalini (*pro hac vice*)
5                                                  DECHERT LLP
                                                   2929 Arch St.
6                                                  Philadelphia, PA 19104

7
                                                   Shari Ross Lahlou (*pro hac vice*)
8                                                  Nathan Richardson (*pro hac vice*)
                                                   DECHERT LLP
9                                                  1900 K Street, NW
                                                   Washington, DC 20006
10

11                                                 Joseph D. Trujillo (SBN 305170)
                                                   DECHERT LLP
12                                                 1 Bush St., Ste. 1600
                                                   San Francisco, CA 94104
13

14                                                 By:  /s/ Bonnie Lau
                                                   Bonnie Lau (SBN 246188)
15                                                 David E. Grothouse (SBN 338805)
                                                   MORRISON & FOERSTER LLP
16                                                 425 Market Street
                                                   San Francisco, California 94105-2482
17                                                 Attorneys for Defendants
                                                   COMMERCIAL METALS COMPANY;
18                                                 CMC REBAR WEST
                                                   CMC STEEL US, LLC
19

20

21

22

23

24

25

26

27

28

1

**ECF ATTESTATION**

2

      I, Bonnie Lau, am the ECF User whose ID and password are being used to file this

3

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

4

**AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**.   In accordance

5

with Civil Local Rule 5-1, concurrence in the filing of this document has been obtained from each

6

of the other signatories, and I shall maintain records to support this concurrence for subsequent

7

production for the Court if so ordered or for inspection upon request by a party.

8

9

Dated: November 2, 2023                      MORRISON & FOERSTER LLP

10

                                      By:  /s/ Bonnie Lau

11

                                            Bonnie Lau

12

                                *Attorney for Defendants*
*COMMERCIAL METALS COMPANY;*

13

*CMC REBAR WEST;*
*CMC STEEL US, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX A



---

[i]     *See* Background ¶ 8.
[ii]    *See* Background ¶¶ 3-5.
[iii]   *See* Background ¶¶ 6-8.
[iv]    *See* Background ¶ 1.
[v]     *See* Background ¶ 8.
[vi]    *See* Background ¶ ¶ 12.
[vii]   *See* Background ¶¶ 3-5.
[viii]  *See* Background ¶ 13.
[ix]    *See* Background ¶ 12.
[x]     *See* Background ¶ 12; Ex 17, Losso I Tr. 207:21-209:4.
[xi]    *See* Background ¶ 8.
[xii]   *See* Background ¶¶ 3-5.
[xiii]  *See* Background ¶¶ 6-8.
[xiv]   *See* Background ¶ 1.
[xv]    *See* Background ¶ 12; Ex. 42, PSG-00047442 at *442.
[xvi]   *See* Background ¶ 16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[xvii] *See* Background ¶¶ 3-5.
[xviii] *See* Background ¶ 15.
[xix] *See* Background ¶ 15.
[xx] *See* Ex. 54, Fabro Tr. 130:8-132:24.
[xxi] *See* Background ¶ 16.
[xxii] *See* Background ¶¶ 3-5.
[xxiii] *See* Background ¶ 15.
[xxiv] *See* Background ¶ 15.
[xxv] *See* Ex. 73, PRIMETALS0000001.
[xxvi] *See* Background ¶ 15.
[xxvii] *See* Background ¶¶ 3-5.
[xxviii] *See* Background ¶ 2.
[xxix] *See* Background ¶ 1.
[xxx] *See* Ex. 4, Scott Henderson Tr. 51:4-52:22.
[xxxi] *See* Background ¶¶ 3-5.
[xxxii] *See* Background ¶ 2.
[xxxiii] *See* Background I ¶ 1.
[xxxiv] *See* Ex. 4, Scott Henderson Tr. 51:4-52:22.