UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC STEEL GROUP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMERCIAL METALS COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-07683-HSG<br><br>**ORDER DENYING MOTION IN LIMINE**<br><br>Re: Dkt. No. 302 |

Before the Court are Plaintiff Pacific Steel Group's ("Pacific Steel") motion in limine, Dkt. No. 302, and Plaintiff's supplemental brief in support of its motion, Dkt. No. 433. The Court **DENIES** the motion.

## I.   BACKGROUND

Plaintiff filed a motion in limine seeking an advance ruling that certain statements by third party Danieli Corporation ("Danieli") were made in furtherance of Danieli's conspiracy with Commercial Metals Company ("CMC"), and thus admissible under the co-conspirator exception to the hearsay rule, Federal Rule of Evidence 801(d)(2)(E). *See* Dkt. No. 302. CMC and its subsidiaries ("Defendants") opposed the motion. *See* Dkt. No. 335. The Court heard argument on the motion at the first pretrial conference on July 30, 2024, and again at an additional pretrial conference on October 11, 2024. *See* Dkt. Nos. 363, 426.

At the Court's request, Plaintiff then identified a narrowed set of statements and testimony it seeks to admit under the co-conspirator exception. *See* Dkt. No. 433. CMC again opposed the admission of the statements. *See* Dkt. No. 438. The Court heard additional argument from the parties on October 21, 2024.

//

## II. DISCUSSION

Rule 801(d)(2)(E) provides that "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). For the Court to admit Danieli's statements under this rule, Plaintiff must prove by a preponderance of the evidence that Danieli participated in a conspiracy with CMC, and that Danieli's statements were made during the course and in furtherance of the conspiracy. *See United States v. Peralta*, 941 F.2d 1003, 1005 (9th Cir. 1991), *as amended on denial of reh'g* (Oct. 31, 1991) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

Pacific Steel seeks to admit the following alleged co-conspirator statements: 1) an email from Pacific Steel executive Mark Olsen to Pacific Steel executive Eric Benson relaying statements Danieli CEO Paolo Losso made to Olsen; 2) testimony from Olsen and Benson as to the content of Losso's statements; and 3) statements Losso made to CMC executives. *See* Dkt. No. 433 at 2. Pacific Steel argues that the conspiracy here is the agreement between Danieli and CMC giving CMC exclusive rights to purchase Danieli's MiDa mills within a specific geographic region, which Plaintiff argues "by design" excluded Pacific Steel from buying a MiDa mill in that area. *See id.* at 4.

As an initial matter, CMC urges the Court not to find that the agreement amounted to a conspiracy because "the co-conspirator exclusion most often comes up in the context of joint illegal conduct," which it argues does not apply to Danieli and CMC's arms-length commercial contract. *See* Dkt. No. 438 at 2. However, the Ninth Circuit's holding in *United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988), is clear that a common plan or enterprise "need not have an illegal objective" to qualify as a conspiracy for the purposes of Rule 801(d)(2)(E). *See id.* at 1398; *see also id.* at 1400 ("Rule 801(d)(2)(E) applies to statements made during the course and in furtherance of any enterprise, whether legal or illegal, in which the declarant and the defendant jointly participated."). Instead, "[t]he critical inquiry is simply whether the [declarant] was acting in his capacity as an agent of the defendant when he uttered the statements sought to be admitted, i.e., whether the statements were made 'during the course and in furtherance of' the common enterprise." *Id.* at 1399.

2

1 Nonetheless, Plaintiff fails to meet this test by a preponderance of the evidence. As the
2 *Layton* court explained, "the theoretical justification for the rule that a coconspirator's statements
3 are admissible comes from the law of agency." *Layton*, 855 F.2d at 1398. As such, the co-
4 conspirator exception is "properly understood as a 'joint venture' exception whose essence is an
5 agreement among the members to pursue some common plan." *Id.* at 1399 (internal citations and
6 quotations omitted). But here, the Court does not find that Plaintiff has met its burden to show
7 that Danieli and CMC were involved in a joint venture or pursued a common plan. Plaintiff relies
8 only on the exclusivity agreement itself, which it asserts reflects a conspiracy because Danieli and
9 CMC essentially "design[ed]" the agreement to exclude Pacific Steel from the rebar market, *see*
10 Dkt. No. 433 at 24. However, there is no mention of Pacific Steel on the face of the agreement,
11 which states that CMC and Danieli agreed Danieli would not sell a MiDa mill to any other
12 company within 500 miles of Rancho Cucamonga, California, among other restrictions. *See* Dkt.
13 No. 343 (quoting Stipulated Fact No. 23, which references the terms of the agreement). The Court
14 has not found any case in which counterparties to an arms-length commercial contract like the
15 agreement here have been found to be agents or joint venturers of one another simply by virtue of
16 the agreement. *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1173 (9th Cir.), *cert. denied*
17 *sub nom. Ratha v. Phatthana Seafood Co.*, 143 S. Ct. 491 (2022) (holding that generally, a
18 purchaser is "not acting on behalf of" a supplier, and that the elements of a joint venture are not
19 present in a typical purchaser-supplier relationship). And Plaintiff's motion does not cite any
20 evidence outside the agreement to support the existence of a joint venture or common plan
21 between Danieli and CMC.
22 Although not controlling, the D.C. district court case Defendants cite is persuasive on this
23 point. In that case, the plaintiffs argued that a defendant agency's communications with the
24 Treasury Department were all admissible as co-conspirator statements because the agency and the
25 department had a contractual relationship, and were therefore in a joint venture. *Fairholme Funds,*
26 *Inc. v. Federal Housing Finance Agency*, 636 F. Supp. 3d 144, 153 (D.D.C. 2022). But the court
27 rejected this argument, reasoning that "[a]greeing to a contract is not the same thing as entering an
28 agency or partnership relationship, and it would make little sense to extend the rule further, to any

3

statements made by a party's contractual counterparty made in furtherance of negotiating a contract between them." *Id.* at 153–54. The Court here is similarly of the view that Plaintiff strays too far from roots of the co-conspirator exception in agency and common enterprise principles by essentially arguing that counterparties to a contract are necessarily co-conspirators. The Court thus concludes that adopting this argument where Plaintiff has not shown a true joint venture would allow the co-conspirator exception to swallow the default rule barring hearsay.

Moreover, the Court finds that the statements Plaintiff seeks to admit were not made in furtherance of any agreement between CMC and Danieli, even if the agreement could be construed as satisfying the first prong of the test. The Ninth Circuit has "strictly construed" the "in furtherance" requirement. *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991). "To be 'in furtherance,' the statements must further the common objectives of the conspiracy," such as "statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities." *See id.* (citations and quotations omitted). The key inquiry is not the "actual effect" of the statement in advancing the goals of the conspiracy, but "the declarant's intent in making the statement." *See id.*

Plaintiff fails to show that any of the statements it seeks to admit meet the "in furtherance" requirement or fit into any of these categories. Plaintiff argues that Danieli CEO Paolo Losso's statements discussing the exclusivity agreement with Pacific Steel's Mark Olsen (as relayed in Olsen's email to Benson) furthered the conspiracy because they were necessary to "give effect" to Danieli and CMC's agreement. *See* Dkt. No. 433 at 6. But Danieli's communication to Pacific Steel explaining the terms of Daniel's agreement with CMC was not necessary to carry out the agreement: as counsel for Pacific Steel acknowledged during the latest hearing on this motion, Danieli could have simply dropped its discussions with Pacific Steel over the MiDa mill, but

4

chose to follow up with its customer, seemingly in an attempt to salvage a business relationship.[1] In particular, Losso's alleged statement that "he believe[d] CMC was trying to protect their market with this investment" by asking for the exclusivity agreement describes CMC's alleged intent, not Danieli's. Accordingly, the statements themselves offer little insight into "the declarant's intent in making the statement" (which underscores that CMC and Danieli likely had different business reasons for entering into the agreement). *See Nazemian*, 948 F.2d at 529. And this kind of narration of past events without accompanying statements of future intent is not admissible under the co-conspirator exception. *See United States v. Layton (Layton I)*, 720 F.2d 548, 556 (9th Cir. 1983), *overruled on other grounds, United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).

Plaintiff also submitted a proffer regarding the anticipated testimony of Pacific Steel executive Eric Benson about his conversations with Mr. Losso, *see* Dkt. No. 448 at 4, none of which falls under the co-conspirator exception for the same reasons. Losso's explanation of the exclusivity agreement to Benson, which Losso allegedly characterized as "not his decision" and one that he "disliked," provides no support for the assertion that Danieli and CMC had a common plan to exclude Pacific Steel, or that Losso's statements were intended to further than plan. As the Court explained at the hearing, some of this testimony may be admissible for a non-hearsay purpose, but Defendants may raise objections with respect to the appropriate scope of that testimony.

Finally, the Court also finds that the statements from Losso to CMC expressing that he wanted to "touch bas[e]" about the agreement and that he was "worried about this whole exclusivity thing" cannot reasonably be construed as having been made in furtherance of any conspiracy. To support its argument, Plaintiff cites *Layton I,* 720 F.2d at 557, which held that "statements made to keep a conspirator abreast of a co-conspirator's activities, or to . . . allay the fears of a co-conspirator are in furtherance of a conspiracy" under Rule 801(d)(2)(E)). *See* Dkt. No. 433 at 6. But Losso's statement that he was "worried" about the contract obviously was not

---

[1] The alleged contents of the statements support this reading, including that Losso "apologized for what happened with CMC" and that he expressed wanting to continue discussing other mills with Pacific Steel. *See* Dkt. No. 433-1.

intended to allay CMC's fears, but rather communicate his own concerns (and apparent dissatisfaction with the limitations in the agreement). This statement also doesn't provide any substantive update that would do anything to "assist the conspirators in achieving their objectives," which the "in furtherance prong" requires. *Layton I*, 720 F.2d at 556. Neither does Losso's statement merely requesting "to have a chat to assess the situation related to our exclusivity agreements." *See* Dkt. No. 433 at 6; *see also Nazemian*, 948 F.2d at 529 ("Mere conversations between co-conspirators, or merely narrative declarations among them, are not made 'in furtherance' of a conspiracy.").

## III. CONCLUSION

The Court finds that Plaintiff has not shown by a preponderance of the evidence that the co-conspirator exception justifies admission of the statements at issue. Accordingly, the Court **DENIES** Plaintiff's motion.

**IT IS SO ORDERED.**

Dated: 10/22/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge